(78 Misc. Rep. 154.)

### OLLWERTER v. ESCHER.

(Supreme Court, Appellate Term, First Department.   November 8, 1912.)

LANDLORD AND TENANT (§ 152*)—LIABILITY FOR RENT—NONPERFORMANCE OF COVENANTS BY LANDLORD—EFFECT.

A landlord, in a lease stipulating that he will without additional charge maintain proper heating and hot water appliances, and supply the proper amount of heat and water to the tenants at all proper times, and that, in case of the heating apparatus requiring repairs, he may omit such service until the necessary repairs have been made, must maintain proper heating and hot water appliances; and where the heating plant is inadequate, notwithstanding constant repairs, to supply heat and water, he must, to hold the tenant liable for the rent after his vacation of the premises, reconstruct the plant or introduce a new plant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 538–543, 545–549, 551–557;  Dec. Dig. § 152.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Mary A. Ollwerter against Franklin Escher.   From a judgment for plaintiff, defendant appeals.   Reversed, and complaint dismissed.

Argued October term, 1912, before SEABURY, GUY, and BIJUR, JJ.

Henry Escher, Jr., of Brooklyn (John B. Gleason, of New York City, of counsel), for appellant.

Samuel Blumberg, of New York City (Harry Kutscher, of Stapleton, of counsel), for respondent.

GUY, J.   Plaintiff is the owner of a lease made October 1, 1911, by the United States Lease Holding Company, to the defendant, of a housekeeping apartment in New York City for the term of one year at the rental of $65 per month.   This action involves the right of the landlord to recover rent from March 1, 1912, until the termination of the lease, May 1, 1912, for which, together with $29 unpaid rent in February, judgment herein has been rendered.

Defendant testified that during the month of January the premises became uninhabitable by reason of insufficient heat, so that he was obliged to move away from the apartment with his wife and infant child; but that, relying upon the landlord's promise to repair, he again returned to the apartment, but during the entire month of Feb-

---

ruary, except on one or two occasions, there was inadequate heat, and the premises became so cold that on February 29, 1912, he was again compelled to vacate. The answer further sets up a counter-claim for $500 damages for expenses necessarily incurred and injury to defendant's health by reason of said eviction.

The lease provides as follows:

"The landlord agrees that, without additional charge, proper heating and hot water appliances shall be maintained in this building of a size sufficient to supply a proper amount of heat and water to all the tenants at all proper times"

—and that, in case of the heating apparatus requiring repair or improvement, the landlord may omit such service until all necessary repairs have been made or completed, without in any manner or respect affecting or modifying the obligations or covenants of the tenant, and in such case the landlord shall use due expedition and diligence to repair, improve, or reconstruct the same.

Defendant produced several witnesses, including the janitor of the premises at the time in question, who testified as to the unheated condition of the building. Plaintiff, in rebuttal, called several witnesses, who testified to constant efforts at repair on the part of the landlord during the months of January and February. It is clear from the evidence of these witnesses that the efforts at repair made by the landlord were not effective in restoring the premises to a properly heated condition. The weight of evidence is conclusively on this point in favor of defendant's contention that the premises were practically uninhabitable because of their unheated condition during the greater part of the months of January and February and at the time the defendant vacated the apartment. This amounted to a constructive eviction of the defendant.

It was the duty of the landlord to maintain proper heating and hot water appliances. The only conclusion that can properly be drawn from the evidence is that the steam-heating apparatus or plant was utterly inadequate, notwithstanding constant efforts at repair, to supply the heat which the landlord had covenanted to furnish. The apparatus being, according to the evidence, inadequate, though subjected to constant repair, to the furnishing of the quantity of heat which the landlord agreed to furnish, it was his duty to reconstruct the same or introduce a new steam-heating plant. He cannot avoid the obligation assumed by him under the lease by proving that the apparatus was worthless and that he made ineffectual efforts to render it fit for the service.

The judgment must therefore be reversed, with costs, and the complaint dismissed, with costs. All concur.